UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RICHARD D.[1],

                              Plaintiff,

   v.                                                       5:17-CV-676 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

STEVEN R. DOLSON, ESQ., for Plaintiff
OONA M. PETERSON, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 3, 4).

## I.   PROCEDURAL HISTORY

Plaintiff protectively filed[2] an application for Disability Insurance Benefits

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

[2] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

("DIB") on August 13, 2014, alleging disability beginning February 21, 2014. (Administrative Transcript ("T") at 9, 135-42). His application was denied initially on October 17, 2014. (T. 48-62). Administrative Law Judge ("ALJ") Paul Greenberg conducted a hearing on June 6, 2016, at which plaintiff and Vocational Expert ("VE") Thomas Heiman testified. (T. 22-47).

In a decision dated July 11, 2016, the ALJ found that plaintiff was not disabled. (T. 7-21). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 28, 2017. (T. 1-6).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

2

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more

3

than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

### III.   FACTS

As of the date of the June 6, 2016 administrative hearing, plaintiff was 58 years old. (T. 28). He was a high school graduate, who had attended special education classes. (T. 241). He resided with his wife, who worked part-time outside the home. (T.

30).

Plaintiff briefly served in the military, but was discharged after contracting an infection during boot camp. (T. 30). Plaintiff's employment history included jobs as a grocery store clerk, courier, and document processor. (T. 31-38, 173, 191-98). His most recent full-time employment, as a delivery driver for an auto parts store, ended after he was involved in a car accident in a work vehicle. (T. 31-32, 38).

Plaintiff suffered an injury to his left foot as a child, which went untreated and caused him persistent problems. (T. 232). In 2014, he was diagnosed with a severely flat foot, and prescribed an ankle foot orthotic brace and orthopedic shoes to provide improved stability. (T. 40-41, 225, 227). Plaintiff reported that these measures had improved his foot pain, but that it still hurt to stand on hard surfaces, such as concrete, and to stand or walk for long periods of time. (T. 39, 232). He also reported arthritis in his left hand and lower back pain, but had not received formal treatment for these issues. (T. 42-43, 232). He did not require a cane or other assistive device. (T. 257).

Plaintiff was not receiving any current psychiatric treatment, but had attended counseling at various points in his life. (T. 241). He reported depression symptoms that primarily occurred in the winter, including dysphoric moods and loss of interest in his usual activities. (*Id*.)

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 12-16). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.  **THE ALJ'S DECISION**

After finding that plaintiff met the insured status requirements through December 31, 2018, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 21, 2014. (T. 12).  Next, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: dysfunction of a major joint (left foot); degenerative disc disease; and obesity. (*Id*.)  At the third step, the ALJ determined that plaintiff's impairments or combination thereof did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 13).

The ALJ found at step four of the analysis that plaintiff could perform a range of sedentary work, so long as he was allowed to regularly change positions while remaining on task. (T. 13-16).  Specifically, plaintiff needed to be allowed to sit for five minutes after standing for twenty five minutes, or stand for five minutes after sitting for twenty five minutes. (T. 14).  In making this RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and Social Security Rulings ("SSR") 96-4p. (T. 14).  Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id*.)

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that plaintiff's statements

6

regarding the intensity, persistence, and limiting effects of those symptoms were not fully credible in light of the record evidence. (T. 14-15). Relying on the VE testimony, the ALJ then determined that plaintiff was able to perform his past relevant work as a document preparer. (T. 17). Accordingly, the ALJ determined that plaintiff was not disabled from February 21, 2014 through the date of the ALJ's decision. (*Id*.)

## V.     ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.    Plaintiff's impairments meet or equal the severity of Listing 1.02(A). (Pl.'s Br. at 8-11) (Dkt. No. 7).

2.    The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 4-8).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 7-12) (Dkt. No. 15). For the following reasons, this court agrees with defendant and will dismiss the complaint.

## DISCUSSION

## VI.    LISTED IMPAIRMENT

### A.     Legal Standard

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment. *See* 20 C.F.R. §§ 404.1520, 416.920. It is the plaintiff's burden to establish that his or her medical condition or conditions meet *all* of the specific medical criteria of particular listed impairments. *Pratt v. Astrue,* 7:06-CV-551, 2008 WL 2594430 at *6 (N.D.N.Y. 2008) (citing *Sullivan v. Zebley,* 493 U.S. 521, 530

(1990)). If a plaintiff's "impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.* In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the *one* most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. at 531 (emphasis added).

### B.     Application

In this case, plaintiff argues that his foot impairment met or equaled the severity of Listing 1.02(A), and that the ALJ failed to properly evaluate the Listing criteria. In order to meet or equal the severity of this Listing, the plaintiff must have a major dysfunction of a joint, due to any cause, that is "characterized by gross anatomical deformity. . . and chronic joint pain and stiffness with signs of limitation or other abnormal motion of the affect joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." *See* 20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.02(A).

In addition, there must also be "involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively . . . ." *Id*. The regulations clarify the meaning of "ambulate effectively," stating:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities . . . .

8

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*See* 20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.00 (B)(2)(b).

Plaintiff contends that the ALJ failed to adequately consider plaintiff's ability to ambulate effectively, because he did not specifically address plaintiff's difficulty with stairs. However, the ALJ did address plaintiff's ability to ambulate in detail. He found "no evidence of an inability to ambulate effective or motor loss accompanied by sensor or reflex loss." The ALJ based this conclusion on podiatry treatment notes that described plaintiff "as having a normal gait and intact muscle, reflex, and sensory response." (T. 13, 225, 227). The ALJ also noted that plaintiff had been fitted with a brace on his left foot, but was able to walk with a slight limp that did not require the use of an assistive device. (T. 13, 233).

The ALJ also addressed plaintiff's ability to ambulate elsewhere in his decision. *See Salmini v. Comm'r of Soc. Sec.* 371 F. App'x 109, 112 (2d Cir. 2010) ("an ALJ 'should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment,' [but] the determination is still supported by substantial evidence "so

9

long as 'we are able to look to other portions of the ALJ's decision and to clearly credible evidence . . . ."). When calculating plaintiff's RFC, the ALJ noted that plaintiff's treating physician, Dr. Andrew Hathaway, found that plaintiff's orthotic treatment provided "significant relief" to plaintiff, and that the limited medical record gave no indication that plaintiff's foot impairment had progressively worsened. (T. 16). Although Dr. Hathaway opined that plaintiff should "rarely" climb stairs, and consultative examiner Dr. Ganesh opined that plaintiff had "mild to moderate limitations with standing, walking, and climbing," there is no narrative in either physician's report to suggest that plaintiff had an "inability to climb a few steps at a reasonable pace." (T. 235, 258). Indeed, although plaintiff reported that he had difficulty climbing stairs, he also reported that his greatest difficulties arose with hard surfaces, such as concrete, and uneven terrain. (T. 42, 185, 232, 245).

Even if the ALJ failed to properly scrutinize plaintiff's ability to climb stairs, any such error would be harmless, because plaintiff would still not satisfy all of the elements of Listing 1.02. The listing requires "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." *See* 20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.02. There are no imaging reports for plaintiff's left foot in the record, and plaintiff does not contend that any physician had made such findings.[3] Thus, plaintiff has not met his burden at step three to show that he meets all the requirements of Listing 1.02. Accordingly, the ALJ's determination that plaintiff's impairments did not meet or equal the severity of a

---

[3] The record only contains imaging reports of plaintiff's lumbar spine. (T.236).

Listed Impairment was supported by substantial evidence.

## VII. RFC EVALUATION/TREATING PHYSICIAN

### A.     Legal Standards

#### 1.     RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-

11

medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### B. Application

Plaintiff argues that the ALJ did not properly weigh the medical evidence regarding plaintiff's physical impairments, particularly the "Residual Functional Capacity Questionnaire" completed by plaintiff's treating physician, Dr. Hathaway, on August 25, 2015. (T. 253-58). This court disagrees, and concludes that the ALJ's assessment of plaintiff's impairments was supported by substantial evidence.

In reaching the RFC determination, the ALJ gave "great weight" to the opinion of Dr. Ganesh, who performed a consultative examination of plaintiff on October 6, 2014. (T. 16, 232-35). Dr. Ganesh opined that plaintiff had no limitations with regard

to sitting or the use of his upper extremities. (T. 235). She also opined that plaintiff had "mild to moderate" limitations with regard to standing, walking, and climbing. (*Id*.) During the consultative examination, observed that plaintiff was in no acute distress, with full flexion and extension in his cervical and lumbar spine, full range of motion in all extremities except for his left ankle, full strength in his upper and lower extremities, and full grip strength in both hands. (T. 234-35).

Dr. Ganesh observed that plaintiff had a "quite severe degree of flat foot on the left side," and a limp that favored his left side. (T. 233). However, plaintiff reported during the examination that his orthotic brace "seem[ed] to be helping," and that he was not in pain. (T. 232). He also reported no difficulties in activities of daily living, such as cooking, cleaning, shopping, and taking care of his personal needs. (T. 233).

Dr. Hathaway offered a more restrictive view of plaintiff's limitations. In his August 25, 2015 opinion, Dr. Hathaway found that plaintiff could sit for six hours and stand or walk for less than two hours during the workday, but would require a change of position on an at will basis, as well as an unscheduled ten minute break every hour. (T. 257). He opined that plaintiff had no limitations with regard to his upper extremities, and that plaintiff could frequently lift up to twenty pounds, and occasionally lift up to fifty pounds. (*Id*.) Dr. Hathaway also opined that plaintiff's impairments were likely to cause him to be absent from work once or twice per week. (T. 258). Despite these limitations, Dr. Hathaway still opined that plaintiff could perform sedentary work on a full-time basis. (*Id*.)

The ALJ did not disregard Dr. Hathaway's treating source opinion, but

discounted it due to the lack of narrative explanation or support in the medical record. (T. 16). An ALJ may consider the lack of support for a "check-box" opinion forms when evaluating a treating source opinion. *See Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2nd Cir. 2004), (noting the "limited value of the standardized check-box forms, which are considered only marginally useful for purposes of creating a reviewable factual record."). The ALJ highlighted the limits of this check-box form with regard to Dr. Hathaway's opinion that plaintiff would have a high degree of absenteeism. (T. 16). There was no support for this conclusion in the notes of Dr. Hathaway or any other treating source, or in a October 6, 2014 consultative psychiatric opinion of Dr. Christina Caldwell. (T. 241-52, 259-61). The ALJ also noted that this projected absenteeism was inconsistent with plaintiff's lengthy work history, and plaintiff's reports that his condition had improved with orthotic treatment. (T. 16, 191-98, 232, 245). Therefore, the ALJ adequately addressed the scope of plaintiff's treatment relationship with Dr. Hathaway.

Plaintiff further contends that even if the ALJ were to assign less than controlling weight to Dr. Hathaway's treating source opinion, the case should still be remanded because the ALJ failed to "explicitly consider" all of the required factors, particularly the "frequency, length, nature, and extent" of the treatment relationship between Dr. Hathaway and plaintiff. (Pl.'s Br. at 7-8). In his August 25, 2015 opinion, Dr. Hathaway reported that he had seen plaintiff "every 3-4 months" since June 4, 2014. (T. 256). There are no June 2014 treatment notes in the record, but the ALJ expressly relied upon Dr. Hathaway's treatment notes from September 2014, December 2014,

14

March 2015, and April 2016 in his RFC determination, and commented on the overall "infrequent" nature of plaintiff's treatment visits. (T. 15-16). "Where an ALJ's reasoning and adherence to the Regulations is clear, [he] is not required to explicitly go through each and every factor of the Regulation." *Clark v. Berryhill*, No. 5:17-CV-568 (GTS), 2018 WL 3069207, at *4 (N.D.N.Y. June 21, 2018) (citations omitted).

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino*, 312 F.3d at 588. However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those opinions, or portions thereof, that he deemed most consistent with plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). In light of the ALJ's detailed analysis of plaintiff's medical history, the relevant medical opinions, and plaintiff's activities of daily living, this court concludes that his RFC determination was supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's

complaint is **DISMISSED**, and it is

      **ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated:    August 7, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge

Case 5:17-cv-00676-ATB   Document 16   Filed 08/07/18   Page 16 of 16